IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA CRUPI,<br><br>           Plaintiff,<br><br>v.<br><br>GWNDHTBL8-15DAYSDELIVERY, et al.,<br><br>           Defendants. | Civil Action No. 2:25-cv-902<br><br><br><br>**FILED UNDER SEAL** |

**DECLARATION OF STANLEY D. FERENCE III IN SUPPORT OF PLAINTIFF'S**
***EX PARTE* APPLICATION FOR ENTRY OF A TEMPORARY RESTRAINING**
**ORDER AND PRELIMINARY INJUNCTION**

I, STANLEY D. FERENCE III, hereby declare as follows:

1. I am an attorney with the law firm of Ference & Associates LLC ("the Ference Firm"), located at 409 Broad Street, Pittsburgh, Pennsylvania 15143 and represent Plaintiff in the above-referenced action.

2. I make and submit this declaration in support of Plaintiff's *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against the above-named Defendants, Third Party Service Providers, and Financial Institutions, in light of Defendants' intentional and willful offerings for sale and/or sales of Infringing Products ("Application").

**Document Authentication**

3. According to the Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, e-commerce sales have resulted in a sharp increase in the shipment of unauthorized products into the United States. Over 89% of all CBP

intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over half (51%) of CBP seizures originated from mainland China and Hong Kong. *Id.* A true and correct copy of an excerpt of this report is attached hereto as **Exhibit 1**.

4. According to Daniel C.K. Chow, in "Alibaba, Amazon, and Counterfeiting in the Age of the Internet," 40 NW. J. INT'L L. & BUS. 157, 186 (2020), third-party service providers do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters" (pages 186-187). A true and correct copy of this report is attached hereto as **Exhibit 2**.

5. A report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) finds that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. A true and correct copy of this report is attached hereto as **Exhibit 3**.

**Rule 65(b) Certifications**

6.  In my experience policing the Plaintiff's products and based upon my review of lawsuits filed by other brand owners, sellers of counterfeit and/or infringing products, particularly those sellers whose product listings are removed, merely change the description or photograph and then re-post the listing for the products on their respective Merchant Storefront[1] or modify or create a new User Account[2] and/or Merchant Storefront and proceed to sell the same product again. Likewise, these counterfeit sellers are sophisticated enough to monitor the US courts through PACER and the like looking for lawsuits that name them or their associates Merchant Storefronts and will drain their related financial accounts upon any notice that a lawsuit is filed against their activity.

7.  Based upon my personal experience and my review of lawsuits filed by other brand owners, I have learned that the Defendants selling on online marketplaces do not display their registered business name or trade name, contact name, complete address, phone numbers, or any other contact information. These Defendants use their respective Merchant Storefronts and User Accounts to anonymously sell their Infringing Products.[3]  Likewise, these Defendants typically use shipping services like EMS and DHL and ePacket.  These shipping services provide

---

[1] As defined in the Complaint, a "User Account" is any and all accounts with online marketplace platforms such as, Amazon.com and Walmart.com, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other persons in active concert with any of them.

[2] As defined in the Complaint, a "Merchant Storefront" is any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.

[3] As alleged in the Complaint, Defendants are using without authorization Plaintiff's Works. Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling unlicensed products that infringe Plaintiff's Works.

minimal tracking and/or use incomplete or made-up return addresses to further secret their identities.

8. Based upon the foregoing facts and supported by the evidence, including the Declarations of Jessica Crupi and Dee Odell, it is submitted that providing notice of the Motion for Temporary Restraining Order and the restraints of the Defendants' Merchant Storefronts and Accounts would allow the Defendants to avoid the Court's Order thus depriving the Plaintiff of any damage recovery and otherwise prevent the full operation of the Court's Order.

9. To prevent the Defendants from escaping the effects of the Court's Order, Plaintiff, Plaintiff's Counsel and their agents have not publicized the filing of this lawsuit or the request for *ex parte* relief.

10. It is respectfully submitted that based upon the Complaint allegations, and the declarations and exhibits submitted therewith, Plaintiff has met the requirements of Fed. R. Civ. P. 65 (b) in its application to the court for an Ex Parte Temporary Restraining Order because:

(a) the specific facts in the affidavit and the complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(b) the movant's attorney (undersigned) has herein certified in writing that notice would, in this case, defeat the purposes of the application for the *ex parte* temporary restraining order and asset restraint.

**Jurisdiction Over Online Marketplaces and Financial Institutions**

11. Defendants at least use the Third Party Service Providers Amazon.com, Temu, and Walmart.com to support and drive consumer traffic to their counterfeiting operation.

Defendants also use the services of the Financial Institutions Amazon pay, PayPal, and Walmart Pay operated by Wal-Mart.com USA, LLC (as more fully described below) to transmit money derived from their transactions on the Third-Party Platforms. Based upon my own research, experience, and communications with various Parties to be enjoined, the paragraphs below set forth my information and belief about the identity of each, service addresses, and willingness to accept service, submit to jurisdiction of this court, and comply with court any orders.

12. Based upon my own research and a review of pleadings (including declarations) in multiple past actions by other brand owners, as described above, Amazon.com is an online marketplace and e-commerce platform that is owned and operated by Amazon.com, Inc. and its affiliate, Amazon Services LLC, a Nevada Corporation, with a registered address of Corporation Service Company, is a foreign registered corporation in the Commonwealth of Pennsylvania with a registered address of c/o Corporation Services Company, Dauphin County and 300 Deschutes Way, SW, Suite 304, Tumwater, WA 98501, ATTN: Legal Department. As such, the Court has jurisdiction over Amazon Services LLC.

13. Wal-Mart.com USA, LLC is a foreign registered corporation in the Commonwealth of Pennsylvania with a registered address of "c/o CT Corporation System Allegheny, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101." Wal-Mart's legal team has indicated by email that it will cooperate with any court order issued by this Court.

14. Amazon is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed. I know from multiple past actions filed by brand owners that counterfeiters do not identify the payment accounts they are using in attempts to evade detection. Because Amazon also operates

as a money transmitter for sales made on Amazon, however, it has the ability to identify and restrain the payment accounts associated with Defendants.  Amazon Payments, Inc. admits on its website, https://pay.amazon.com/us/help/82972 (last accessed on June 12, 2025), it is a licensed money transmitter under Pennsylvania's Transmitting Money Act (License #17489).  As such, this Court has jurisdiction over Amazon Payments, Inc.

15. PayPal, Inc. is foreign registered corporation in the Commonwealth of Pennsylvania with a registered address of "c/o CT Corporation System Dauphin" which indicates "c/o C T Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101." According to PayPal's website at https://www.paypal.com/us/webapps/mpp/licenses (last accessed on June 12, 2025), it is a licensed money transmitter under Pennsylvania's Transmitting Money Act (License #0043). As such, this Court has jurisdiction over PayPal, Inc.

16. Wal-Mart.com operated by Walmart Inc. and Wal-Mart.com USA, LLC (collectively "Walmart") is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Walmart's payment processing and retention service, Walmart Pay.  As such, Defendants' payment information is not publicly disclosed.  I know from multiple past actions filed by brand owners that counterfeiters do not identify the payment accounts they are using in attempts to evade detection.  Wal-Mart.com, however, has the ability to identify and restrain the payment accounts associated with Defendants and has indicated that it will cooperate with counsel to comply with any restraining orders.

17. Klarna, Inc. is foreign registered corporation in the Commonwealth of Pennsylvania with a registered address of "c/o CT Corporation System Dauphin" which indicates "c/o C T Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101." According to NMLS's website at:

https://www.nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/1353190 (last accessed on June 12, 2025), it is a licensed money transmitter under Pennsylvania's Transmitting Money Act (License #60039). As such, this Court has jurisdiction over Klarna, Inc.

18.  Temu Marketplace is owned and operated by Whaleco Inc., a Delaware Corporation, which is a wholly owned subsidiary of Pinduoduo Inc. which is owned by PDD Holdings (collectively, "Temu"). Temu has the ability to identify owners of Temu storefronts, restrain seller's accounts and take down infringing listings. Temu has confirmed for Plaintiff's counsel that it will comply with any court orders issued against sellers on the Temu Marketplace.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Pittsburgh, Pennsylvania
June 30, 2025

/Stanley D. Ference III/
Stanley D. Ference III