IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA CRUPI,<br><br>      Plaintiff,<br><br>v.<br><br>GWNDHTBL8-15DAYSDELIVERY, *et al.*,<br><br>      Defendants. | Civil Action No.  2:25-cv-902<br><br><br><br>**FILED UNDER SEAL** |

**PLAINTIFF'S *EX PARTE* MOTION FOR AN ORDER
AUTHORIZING ALTERNATIVE SERVICE ON DEFENDANTS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

Plaintiff JESSICA CRUPI, ("Plaintiff") hereby moves this Court on an *ex parte* basis,[1] for an order authorizing alternate service of process on Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on **Schedule "A"** of the Complaint (collectively "Defendants"), brought pursuant to Federal Rule of Civil Procedure 4(f)(3). In support thereof, Plaintiff submits the following:

---

[1] Plaintiff is moving for alternate service *ex parte* as Plaintiff has yet to provide Defendants with notice of this action. Contemporaneously herewith, Plaintiff has filed its *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("*Ex Parte* Application for Temporary Restraining Order"), together with the supporting Declarations and Exhibits. The present Motion makes reference to Plaintiff's *Ex Parte* Application for Temporary Restraining Order, and as such, Plaintiff seeks to prevent premature disclosure of that filing. (See Declaration of Stanley D. Ference III in Support of Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants ["*Ference Dec.*"] ¶ 1, n.1, filed herewith.) However, Plaintiff is filing this Motion so that, in the event Plaintiff's *Ex Parte* Application for Temporary Restraining Order and the instant Motion are granted, Plaintiff can effectuate service of process pursuant to Rule 4 of the Federal Rules of Civil Procedure simultaneously with providing notice of the Court's order on Plaintiff's *Ex Parte* Application for Temporary Restraining Order. (*See id*.)

## I.     INTRODUCTION

Plaintiff is suing Defendants for Federal Copyright Infringement pursuant to 17 U.S.C. § 501(a) *et seq*. Defendants are selling unauthorized products that are direct copies or derivative works of the copyrighted subject matter of Plaintiff's registered Copyrighted Work, hereinafter referred to as the "Emotion Products." *See* Complaint, ¶ 1. The Emotion Products are sold and delivered within this district and throughout the United States by operating e-commerce stores established via the Internet marketplace websites Amazon.com, Temu.com, and Walmart.com under their Store Names and Seller Names identified on Schedule "A" of the Complaint (the "Seller IDs").

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order authorizing service of process on Defendants via electronic communication ("e-mail") and via website publication. E-mail and website publication service are appropriate and necessary in this case, because Defendants (1) operate via the Internet, and (2) rely on electronic communications to operate their businesses. As such, Plaintiff has the ability to contact Defendants directly and provide notice of Plaintiff's claims against them electronically via e-mail. Additionally, Plaintiff has created a publication website and will be posting copies of the Complaint, Plaintiff's *Ex Parte* Application for Temporary Restraining Order, this instant Motion, and all other documents filed in this action. Plaintiff respectfully submits that an order allowing service of process and future filings[2] via e-mail and by publication on a designated website will benefit all parties and the Court by ensuring Defendants receive immediate notice of the pendency of this action and

---

[2] Fed. R. Civ. P. 5 governs service of pleadings and other papers once service of process has been made. Service is not required on any party that fails to appear. *See* Fed. R. Civ. P. 5(a)(2). Nonetheless, Plaintiff proposes to continue to serve pleadings and other papers via e-mail and by posting on a designated website.

allowing this action to move forward expeditiously. Absent the ability to serve Defendants by email and/or website publication, Plaintiff will almost certainly be left without the ability to pursue a remedy.

## II.   STATEMENT OF FACTS

### A. Defendants Have Valid and Operational Means of Electronic Contact.

Defendants operate Internet-based businesses and use electronic means of communication such that Plaintiff will be able to provide Defendants with notice of this action via e-mail and website publication. As a practical matter, it is necessary for merchants who operate entirely online, such as Defendants, to provide customers with valid electronic means by which customers may contact the merchants to ask questions about the merchants' products, place orders from the merchants, and receive information from the merchants regarding the shipments of orders. Further, e-commerce defendants generally must maintain accurate e-mail addresses where their marketplace platforms and payment processor may communicate with them regarding issues related to their e-commerce store accounts and transfer of funds for the payment for goods. Plaintiff has also created a webpage on www.ferencelawsuit.com ("Plaintiff's Website"), such that anyone accessing Plaintiff's Website will find copies of documents filed in this action. (See *Ference Dec.*, ¶ 5.)

Amazon.com, Inc., which operates the Amazon.com marketplace maintains contact e-mail addresses for sellers operating via their marketplaces, and based upon past actions, Amazon.com, Inc. identifies these contact e-mail addresses for Defendants at issue upon compliance with a temporary restraining order, such as the temporary restraining order Plaintiff is requesting in the instant case. (See *Ference Dec.*, ¶ 3.) Additionally, Defendants operating their respective e-commerce stores via the Internet marketplace website Amazon.com have

provided an electronic form of contact in the form of Amazon's messaging system. (*Id.*) Amazon's messaging system facilitates communication between customers and merchants in the Amazon.com marketplace. (*Id.*)

Temu.com provides a direct messaging system that facilitates communication via chat between customers and merchants in the Temu.com marketplace. (See *Ference Dec.*, ¶ 5.) By clicking on the contact seller link on the seller's storefront, a customer can communicate by chat directly with the Temu seller. (*Id.*) *Chat* will confirm that messages have been received and answered. Chat allows the customer to leave a message for later response. (*Id.*)

Walmart.com provides a direct messaging system that facilitates communication between customers and merchants in the Walmart.com marketplace. (*See Ference Dec.*, ¶ 4) By clicking on the contact seller link on the seller's storefront, a customer can communicate with a Walmart merchant via an encrypted email address that the seller can use through their private email address to reach the customer.[3] (*Id.*) Walmart requires the merchant to respond to the customer emails within 48 hours of receiving the message. (*Id.*)

Accordingly, each Defendant will be provided with notice of this action electronically by providing the address to Plaintiff's Website (discussed *supra*) to their corresponding e-mail addresses and/or direct messaging or inquiry system that Defendants use to conduct their commercial transactions via the Sellers IDs. (*Ference Dec.,* ¶ 6) In this manner, Defendants will receive a web address at which they can access all electronic filings to view, print, or download any document filed in the case similar to the court's CM/ECF procedures.

---

[3] See Communicate with Marketplace Seller https://www.walmart.com/help/article/marketplace-sellers-on-walmart/33258c6228d94acbbcbdaf6b7b0b616b (last visited June 26, 2025).

Finally, Plaintiff will be able to provide each Defendant notice of this action via public announcement on Plaintiff's designated website. Plaintiff has created a publication website that will be appearing on www.ferencelawsuit.com ("Plaintiff's Website), whereupon copies of the Complaint, Plaintiff's *Ex Parte* Application for Temporary Restraining Order, this Motion, discovery, and other filings, and orders issued in this action will be posted, such that anyone accessing Plaintiff's Website will find copies of documents filed in this action similar to the Court's CM/ECF procedures. (*Ference Dec.*, ¶¶ 5-6.) The address for Plaintiff's Website will be provided to Defendants via their known-mail accounts and/or onsite contact forms, and will be included as part of service of process in this matter. (*Id*.)

**B. Defendants Rely on Electronic Communications.**

Defendants have structured their e-commerce store businesses so that the sole means for customers to purchase Defendants' goods at issue is by placing an order electronically. Defendants take and confirm orders online and rely on electronic means to receive a payment. (*See* Declaration of Dee Odell in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [*Odell Dec.* ¶ 2].) During the investigation, Plaintiff was able to view Defendants' Infringing Products, add products to the online shopping cart, proceed to a point of checkout, add a shipping address in this judicial district and payment information and otherwise actively exchange data with each Merchant Storefront. (*Id*.) Clearly, Defendants rely on electronic means as reliable forms of contact.

### III.    ARGUMENT

Pursuant to Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other unincorporated association may be served with process in any manner prescribed by Rule 4(f) for

serving foreign individuals. Federal Rule of Civil Procedure 4(f)(3), allows a district court to authorize an alternate method for service to be affected upon a foreign defendant, provided that it is not prohibited by international agreement and is reasonably calculated to give notice to the defendant. In the present matter, alternate service of process via e-mail and website publication are appropriate given that Defendants have established Internet-based businesses by which they rely on electronic communications for their operation. Accordingly, this Court should permit service on Defendants by e-mail and website publication.[4]

### A. The Court May Authorize Service via Electronic Mail and Website Publication Pursuant to Federal Rule of Civil Procedure 4(f)(3).

Fed. R. Civ. P. 4(f)(3) enables a foreign business entity to be served with process using an alternative method of service so long as the alternative method: (1) "is not prohibited by international agreement" and (2) "comports with constitutional notions of due process". *Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, No. 13-cv-458, 2013 WL 1644808 at *1, *2 (W.D. Pa. April 16, 2013) (Hornak, J.). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 330 (S.D.N.Y 2015) (quoting *Advanced Aerofoil Techs., AG v. Todaro,* 2012 U.S. Dist. LEXIS 12383, at *1 (S.D.N.Y. Jan. 31, 2012) (internal citations omitted)). Since third-party merchants on Internet marketplaces, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there

---

[4] Additionally, according to Article 1 of the Hague Convention, "[the] convention shall not apply where the address of the person to be served with the document is not known." See Hague Convention, Art1, 20 U.S.T. 361 (1969). Plaintiff has not identified a valid address for service of process on Defendants. (See Ference Dec. ¶14) Thus, Plaintiffs also submit that the Hague Conventions does not apply in this case.

are, in fact, no physical addresses whatsoever associated with the majority of Defendants' User Accounts, this is exactly the circumstance where the courts should exercise, as they previously have exercised, the authority to grant alternative methods of service. *See Id.* (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 115 (S.D.N.Y. 2010) ("The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court.") (internal quotation marks omitted)); *see also Ference Dec.,* ¶¶ 3 - 10.

Fed. R. Civ. P. 4(f)(3) permits service in a place not within any judicial district of the United States[5] "by any internationally agreed means of service that is reasonably calculated to give notice". *See Rio Props. v. Rio Intern. Interlink,* 284 F. 3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Props.* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.,* 284 F. 3d at 1014-15. As the *Rio Properties* Court explained, Rule 4(f) does not create a

---

[5] In the unlikely event a defendant for whom Plaintiff does not have an address was located in the United States, service would be governed by Fed. R. Civ. P. 4(e)(1), which provides for "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located". Pa. R. Civ. Pro. 430 provides "[i]f service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service." Thus, service by electronic means would also be sufficient in the event any Defendant is located in the United States. *See Power Corp. of Canada v. Power Financial*, No. 4:09-cv-0510, 2009 WL 982750 (M.D. Pa., April 13, 2009) (service by email is permitted under Rule 430 when defendant uses online service that shields owner's identity).

hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve the defendants via electronic publication and/or e-mail.

Additionally, the Constitution itself does not mandate that service be effectuated in any particular way. Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, Case No. 05-CIV-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust* 10 Co., 339 U.S. 306, 314 (1950)); *see also TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. Jan. 11, 2012); *Rio Props., Inc.*, 284 F.3d at 1016. Accordingly, federal courts have allowed a variety of alternative service methods, including service by e-mail and publication on a designated website, where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action. *See, e.g., Rio Props., Inc.*, 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, 245 B.R. 713, 721 (N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."); *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (in "acknowledging the realities of the twenty-first

century and the information age, the Court determined that the most appropriate place for publication was [Plaintiff's Website].").

Here, service on Defendants by e-mail and/or by publication on Plaintiff's Website will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiff's claims. Based upon Plaintiff's investigation, each Defendant has at least one form of electronic means of contact, demonstrating that this means of contact is not just effective, but the most reliable means of communicating with that Defendant, and consequently, the most reliable means of providing Defendants with notice of this action. (*Ference Dec.*, ¶¶ 5-6.) Moreover, service by publication on Plaintiff's Website will be an additional source of reliability as Defendants will be able to see copies of the Complaint and all other documents in this matter electronically via their Internet browser. (*Id.*)

E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when the plaintiff has proven that e-mail is the most effective means of providing the defendant notice of the action. *See Rio Props., Inc.*, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond— but in this case, it was the method of service most likely to reach [the defendant]."). *See also Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts") (citation omitted). The *Rio*

*Properties, Inc.* and *Popular Enters., LLC* courts each determined e-mail service to be appropriate in part because, as in this case, the defendants conducted their businesses online, used e-mail regularly in their businesses, and encouraged parties to contact them via e-mail. *See Id.*

In cases that are factually similar to this one, a number of Courts have held that alternate forms of service pursuant to Rule 4(f)(3), such as e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Properties, Inc.*, 284 F.3d at 1018; *see also Chanel, Inc. v. Zhixian*, Case No. 09-cv-02835, 2010 WL 1740695, at *3 (W.D. Tenn. March 17, 2010) (e-mail service "reasonably calculated to notify Defendants of the pendency of this action and provide him with an opportunity to present objections."); *TracFone Wireless, Inc.*, 278 F.R.D. at 693 (finding that service of process by e-mail was reasonably calculated to apprise the defendants of the action and give it an opportunity to respond); *Popular Enters., LLC*, 225 F.R.D. at 563 12 (same); *In re Int'l Telemedia Associates*, 245 B.R. at 722 ("A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party" (concluding e-mail and facsimile service to be appropriate)); *Chanel, Inc. v. Zhibing*, 2010 WL 1009981, at *4 (stating that e-mail service has the "greatest likelihood" of reaching e-commerce merchants and noting, "The federal judiciary's own CM/ECF system alerts parties . . . by e-mail messages." Alternate service via e-mail granted).[6]

---

[6] Courts in the Southern District of New York are also very experienced in handling cases against merchants on Internet marketplaces and have consistently permitted alternate electronic service. *See, e.g. Intenze Products, Inc. v. 1586, et al.*, No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018)*; Allstar Marketing Group, LLC v. 158, et al.*, No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018)*; William Mark Corporation v. 1&cc, et al.*, No.

This Court has also authorized electronic service of process on merchants on Internet marketplaces in cases that are factually similar to the present case. *See, e.g., Rapid Slicer v. Buyspry*, No. 19-cv-249 (Order Authorizing Alternative Service entered on March 11, 2019) (Horan, J.); *Airigan Solutions, LLC v. Babymove*, No. 19-cv-166 (Order Authorizing Alternative Service entered on February 14, 2019) (Fischer, J.); and *Airigan Solutions, LLC v. Artifacts_Selling,* No. 18-cv-1462 (Order Authorizing Alternative Service entered on November 2, 2018) (Fischer, J.). Plaintiff submits that allowing e-mail service in the present case is appropriate and comports with constitutional notions of due process, particularly given

---

18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018)*; WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018)*; Ideavillage Products Corp. v. abc789456, et al*., No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018)*; Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739-JGK, Dkt. 22 (S.D.N.Y. March 28, 2018)*; Moose Toys Pty Ltd. et al., v. 963, et al*., No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018)*; Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27, 2018)*; JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018)*; WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26, 2018)*; Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018)*; WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y. Dec. 11, 2017)*; HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017)*; Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017)*; Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)*; Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbabyfactory et al.,* No. 17- cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017); *Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)*; Ideavillage Products Corp. v. Bling Boutique Store, et al*., No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015) (unpublished); *Chanel, Inc. v. Conklin Fashions, Inc*., No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015)*; Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD*, 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015); *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015)*; Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al*., No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) (unpublished)*; N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co*., No. 1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011).

Defendants' decision to conduct their illegal businesses using the Internet and utilizing e-mail as a primary means of communication.

Additionally, service of a defendant by publication on a designated website,[7] such as Plaintiff's Website, has been deemed appropriate service "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does,* 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 315-16 (1950)). In *National Association for Stock Car Auto Racing, Inc. v. Does,* the United States District Court for the Western District of North Carolina determined that the plaintiff could serve "Doe" defendants and apprise those defendants of a pending preliminary injunction hearing by publishing on the plaintiff's website. *Id.*

Accordingly, Plaintiff has created a publication website on www.ferencelawsuit.com whereon copies of the Complaint, Plaintiff's *Ex Parte* Application for Temporary Restraining Order, this instant Motion, discovery, and other documents filed in this action will be posted. (*Ference Dec*., ¶ ¶ 11 - 12). The address for Plaintiff's Website will be included as part of service of process in this matter. (*Id.*) Posting the Summonses, Complaint, and Plaintiff's *Ex Parte* Application for Temporary Restraining Order on Plaintiff's Website will provide notice sufficient to meet the due process requirements for service of process and notice pursuant to

---

[7] The Ference firm is prepared to provide notice via website publication if permitted by the Court. Through the email addresses received from the Third-Party Service Providers and Financial Institutions, Ference would provide the named Defendants with a link to a web page accessible at www.ferencelawsuit.com that includes all of the relevant filings for the lawsuit. *See Ference Dec*., ¶¶ 5-6.

Federal Rule of Civil Procedure 4, apprise Defendants of the pendency of this action, and afford Defendants and any other interest parties an opportunity to present their answers and objection.

### B. E-mail and Publication Service Are Not Prohibited by International Agreement.

Service via e-mail and website publication is not prohibited by international agreement. Based upon the information contained on Defendants' actual e-commerce marketplace stores, such as shipping information, and the data provided thereunder, Plaintiff has good cause to suspect some Defendants may be residing in the People's Republic of China ("China") or other foreign jurisdictions. (*Ference Dec*. ¶¶ 7) Both China and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Service Convention"). (*See Ference Dec*. ¶ 8 and Comp. Ex. 1 thereto, Hague Service Convention and list of signatory Members.) However, the Hague Service Convention does not preclude the Court from authorizing service of process via e-mail or website publication.

Alternative means of service, such as e-mail and website publication, are not prohibited by the Hague Service Convention where a signatory nation has not expressly objected to those means. *See Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590-FAM, 2015 U.S. Dist. LEXIS 122000 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention is limited to the forms of service expressly objected to). Article 10 to the Hague Service Convention allows service of process through means other than a signatory's Central Authority, such as "postal channels" and "judicial officers," provided the State of destination does not object to those means. *See* Hague Convention, Art. 10, 20 U. S. T. 361 (1969). China has objected to the alternative means of service outlined in Article 10 of the Convention. (*Ference Dec*., ¶ 14.) However, that objection is specifically limited to the means

of service enumerated in Article 10, and China has not expressly objected to service via e-mail or website publication. (*See id*. and Comp. Ex. 1 thereto, which includes a true and correct printout of China's Declaration/Reservation/Notification in regards to the Hague Convention.) Because the declaration to the Hague Convention filed by China does not object to e-mail and website publication service, "a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]." *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011); *see also WhosHere, Inc. v. Orun*, Case No. 13-cv-00526-AJT, 2014 U.S. Dist. LEXIS 22084, at *9 (E.D. Va. Feb. 20, 2014) (authorizing e-mail service, noting objection to means of service listed in Article 10 "is specifically limited to the enumerated means of service in Article 10."). Moreover, an objection to the alternative means of service provided in Article 10 does not represent a per se objection to other forms of service, such e-mail or website publication. *See In re S. African Apartheid Litig*., 643 F. Supp. 2d 423, 434, 437 (S.D.N.Y. 2009) (requiring express objection to alternative method of service by signatory nation to preclude that particular means of service). Consequently, China's objections to the means of alternative service provided in Article 10 are no bar to court-directed service and do not prevent this Court from authorizing alternative service of process via e-mail or website publication. *See, e.g., Gurung*, 279 F.R.D. at 220 (approving service of process on foreign defendants via e-mail despite India's objection to Article 10, stating that an "objection to service through postal channels does not amount to an express rejection of service via electronic mail."); *Stat Med. Devices, Inc.*, 2015 U.S. Dist. LEXIS 122000, at *8-9 (permitting service of process on foreign defendants via e-mail and substituted service on domestic counsel despite Poland's objection to Article 10, noting "This Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague Convention . . . does

not equate to an express objection to service via electronic mail."); *FTC v. PCCare247 Inc.*, Case No. 12-cv-7189-PAE, 2013 U.S. Dist. LEXIS 31969, at *10 (S.D.N.Y. March 7, 2013) (authorizing service of process via e-mail and Facebook, explaining that "Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *WhosHere, Inc.,* 2014 U.S. Dist. LEXIS 22084 (authorizing service of process on foreign defendants via e-mail despite Turkey's objection to Article 10); *Richmond 17 Techs., Inc. v. Aumtech Bus. Solutions*, Case No. 11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011) ("[N]umerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that, like India, have objected to the alternative forms of service permitted under Article 10 of the Hague Convention.").

### C. The Hague Convention Does Not Apply to Service in this Case Because Plaintiffs Will Not Transmit Process Internationally

Importantly, the Hague Convention does not broadly control all service upon foreign parties. Rather, it has a very precise and narrow scope, applying only "where there is occasion to transmit a judicial … document for service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 108 S. Ct. 2104, 100 L.Ed.2d 722 (1988). If the Court grants this motion, Plaintiff will not be transmitting the summons or complaint to the Defendants in the countries where they reside. Thus, the Hague Convention is not implicated at all in this case.

In *Volkswagenwerk Aktiengesellschaft v. Schlunk*, Volkswagen's Germany-based parent company maintained that service on it fell under the Hague Convention, arguing that every case involving service on a foreign national requires the plaintiff to "transmit a judicial … document for service abroad," thereby triggering the requirements of the Hague Convention. *Id*. at 707. In that case, the plaintiff served the German defendant by delivering the summons and complaint to

an Illinois subsidiary of the defendant, as authorized by Illinois law. The defendant argued that this service was covered by the Hague Convention because the subsidiary was certain to transmit the summons and complaint to the parent corporation in Germany. The Supreme Court rejected this argument, holding that the Hague Convention did not apply because the plaintiff did not transmit judicial documents internationally. *Id.*

The same is true here. If the Court grants this motion, Plaintiffs will serve the Defendants without transmitting documents abroad either physically or electronically by sending them emails *with links* to the summons, complaint, and the other documents filed in the case and by publication of those documents on a designated website hosted in the United States. Under both methods of service, the operative documents will be maintained on a server in the United States.**8** In other words, Plaintiff will not transmit the judicial documents internationally, and the Supreme Court has explicitly held that, without transmission internationally, the Hague Convention does not apply.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the present motion and authorize service of the Summonses, the Complaint, discovery, and future filings in this matter upon each Defendant in this action:

---

8   *See* **Exhibit 1** filed herewith (Screenshot from ip-tracker.com showing results of search for ferencelawsuit.com showing the server hosting the website is located in the United States). According to ip-tracker.com website, **"**Domain to location is simplified version of our IP Lookup tool. This tool locates the geographical position of the server from the domain and finds its IP The result includes the IP and address of the requested domain, followed by information about the city and country where it is located, as well as a visual location on the map." Available at https://www.ip-tracker.org/domain-to-location.php (last visited on June 26, 2025).

(1) via e-mail by providing the address to Plaintiff's Website to Defendants via (i) the e-mail accounts provided by Defendants as part of the data related to their respective e-commerce stores, or (ii) via the e-commerce marketplace for each of the e-commerce stores; and

(2) via website publication by posting a copy of the Summonses, Complaint, Plaintiff's *Ex Parte* Application for Temporary Restraining Order, discovery, and all filings in this matter on Plaintiff's Website appearing on www.ferencelawsuit.com.

A Proposed Order granting this motion is submitted herewith.

Respectfully submitted,

Dated: June 30, 2025

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff